IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN W. WARD, #300715            *
          Plaintiff,
    v.                            *   CIVIL ACTION NO. CCB-05-91

JON P. GALLEY, et al.             *
          Defendants.
                   ******

## MEMORANDUM

I. Procedural History

Plaintiff is a inmate held on the protective custody ("PC") tier at the Western Correctional Institution ("WCI"). On January 18, 2005, plaintiff was directed to file a supplemental complaint with regard to his underlying civil rights allegations concerning the PC tier at WCI.[1] Paper No. 2. On February 4, 2005, he filed a supplemental complaint for injunctive relief, along with a motion for preliminary injunction. Paper Nos. 3 & 4. In his supplemental complaint against Defendants Jon Galley, the Classification Department, Chief of Security, and the Department of Corrections ("DOC"), plaintiff claims that:

1.    PC inmates should have their own tier and not be housed with general population inmates or required to share the showers with segregation inmates;

2.    PC inmates should have their own kitchen, and should not be fed by general population inmates;

3.    PC inmate should have access to the same programs as general population inmates;

---

[1] Plaintiff originally filed a request to reopen the case of *Montgomery v. Collins*, Civil Action No. HM-71-1076 (D. Md. 1971) ("*Montgomery*"), in which a consent decree had been entered related to the conditions of confinement and classification of protective custody inmates at a facility former known as the Maryland State Penitentiary. Plaintiff sought to reopen *Montgomery* and to expand the case to include the WCI Warden, and the Chief of Security, the Commissioner of the DOC, and the Secretary for the Department of Public Safety and Correctional Services, as defendants. The request to reopen *Montgomery* was denied and plaintiff was ordered to file a supplemental complaint.

    4.        PC inmates should be escorted at all times when off the tier;[2] and

    5.        PC inmates should receive single-celled housing.

Paper No. 3 at Attachments.

In his motion for preliminary injunction, plaintiff states that he will be subject to irreparable harm if he is not single-celled and kept "safe from his enemies." Paper No. 4. He asserts that his requests for a single cell and to amend his enemy list to add the names of an additional eleven inmates were denied.[3] *Id*. Plaintiff maintains that he is in danger from these individuals and the gangs to which they belong.[4] He alleges that a substantial risk of harm will arise if an undocumented enemy is placed in his cell, and that WCI classification personnel have exposed him to such a risk by not adding the additional inmates to his enemy list. *Id*. Plaintiff claims he will show a pattern of assaults at WCI caused by the placement of enemies in the same cell due to housing mistakes or in retaliation for the filing of lawsuits.[5] *Id*.

In response to the aforementioned filings, a decision on plaintiff's motion for preliminary injunction was stayed and counsel for defendants was directed to file a show cause response to plaintiff's request for protection. Plaintiff subsequently filed an amendment to his complaint, addressing transportation security issues and a February 11, 2005 incident involving the death of a

---

[2] Plaintiff claims that on January 27, 2005, there was no escort for PC inmates from the WCI library to the housing unit. Paper No. 4, Ex. 11.

[3] Only ten inmates are identified.

[4] According to plaintiff these additional enemies are associated with: the "Young Sok" murder case; a drug trafficking case in Montgomery County, Maryland; and a check fraud scheme case. Paper No. 4. Plaintiff also claims that he has received threatening messages from gangs, including the "MS 13" Salvadoran gang. *Id*.

[5] A number of plaintiff's attachments include newspaper articles which address litigation in this court involving alleged incidents of abuse at WCI. Paper No. 4 at Attachments.

DOC inmate on a transportation bus. Paper No. 7. Counsel was provided a copy of the amendment and granted additional time to file a response.

Currently pending before the court are defendants' responses to the complaint for injunctive relief, construed as motions for summary judgment. Paper Nos. 11 & 12. Plaintiff has filed his oppositions thereto, along with a motion of supplemental response.[6] Paper Nos. 13 & 17-18. The case is ready for consideration and may be determined on the pleadings. *See* Local Rule 105.6. (D. Md. 2004).

## II. Analysis

In order to survive a defendant's properly supported motion for summary judgment, a plaintiff is required to produce some evidence to support each of his claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where all of the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 322. While the facts and all reasonable inferences drawn therefrom must be viewed in a light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only disputed issues of material fact will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[6] The motion has been construed as a supplemental motion for preliminary injunction.

To meet the standard for establishing a failure-to-protect claim under the Eighth Amendment, a prisoner must project evidence that a prison official "knows of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997). Where, as here, an inmate is seeking injunctive relief in conjunction with his Eighth Amendment claim, relief may only be granted if the inmate can demonstrate: (i) the likelihood he will be irreparably harmed if emergency relief is denied; (ii) the likelihood that defendant will not be harmed if the requested relief is granted; (iii) the likelihood that he will succeed on the merits; and (iv) the public interest will be served if the injunction is granted. *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 195-96 (4th Cir. 1977).

Based upon a review of the materials provided this court, the motion for preliminary injunction shall be denied and the complaint for injunctive relief shall be dismissed. According to the record, plaintiff attained PC status on January 30, 2003, and is currently housed in Building 4 at WCI. Paper No. 11, Exs. 1 & 4. Plaintiff has met with WCI staff regarding his enemy alert list and three inmates have been placed on his OBSCIS list. *Id*. Two of these three inmates are housed at another facility, while the remaining inmate, Neal Willey, is housed at WCI in a separate housing unit. *Id*., Ex. 4A. The names of other alleged inmate enemies submitted by plaintiff in this case were investigated by WCI personnel. Eight of those individuals do not have DOC identification numbers and are not housed in a Maryland prison. The remaining identified inmates have no documented incidents with plaintiff and none is housed on PC at WCI. *Id*., Ex. 5.

In response to plaintiff's demand that PC inmates should be escorted at all time when leaving the PC tier, defendants maintain that an escort is not needed during mass movements of PC inmates,

4

because the institution is locked down when the movement occurs. Paper No. 11, Ex. 5. They assert that when a PC inmate is moved to participate in an individual appointment, he receives an escort. *Id*. Defendants maintain that all inmate movements are monitored to ensure the safety of the inmates. *Id*. They further assert that plaintiff's mere recitation of allegations raised by other inmates does not provide "credible evidence" that there is a pattern of abuse at WCI with regard to the housing of enemies together. Defendants argue further that given the WCI population of approximately 1900 inmates, the reference to three to four inmate complaints does not project evidence of a widespread abuse of power or deliberate indifference towards the safety of inmates. *Id*.

In regard to plaintiff's complaint regarding his court transport on September 9, 2004, defendants state that plaintiff was transported to the Circuit Court for Montgomery County pursuant to routine security measures. Paper No. 12, Ex. 1. They maintain that there were no court orders which required plaintiff to be transported separate and apart from all other inmates during his court trips and that DOC officials only received a separation order request filed by plaintiff's attorney the day before the transport. *Id*. Plaintiff's attorney was contacted, informed of the security measures for the transfer, and agreed with the sufficiency of the transport procedures. *Id*., Exs. 1 & 3-8.

Plaintiff continues to maintain that he has a safety issue at WCI and reiterates a number of allegations raised in his original complaints  Paper Nos. 17 & 18. He claims that he has provided information to prison and local authorities regarding illegal and criminal activities. Paper No. 17. Plaintiff further asserts that the threat to his safety is illustrated by the fact that institution staff has pursued an Interstate Corrections Compact ("ICC") transfer with Florida authorities. Paper No. 17; Paper No. 18 at Nines Decl. Plaintiff claims that while Florida declined to accept plaintiff's

application, the fact that he qualified for an ICC transfer establishes that he is a special management case and his safety is at risk, even while housed on PC. Paper No. 18.

Verified documents and declarations show that plaintiff's safety has been addressed by WCI staff. He is housed in the disciplinary/isolation unit at WCI, where the majority of the tier consists of PC prisoners who are provided an opportunity for movement free from contact with non-PC prisoners. There is no requirement that PC prisoners be single-celled and in any event plaintiff is housed with another PC prisoner. Plaintiff does not claim that his cellmate is an enemy or has jeopardized his safety. When he leaves his cell for an individual appointment, plaintiff is subject to guard escorts. During mass PC movements, such as the library visit discussed by plaintiff, WCI is on lock-down status. The inmates listed on plaintiff's OBSCIS enemies list are not housed in plaintiff's unit. Further, WCI classification personnel have investigated the alleged inmate enemies named in this complaint and found that the majority of the individuals are not listed as Division of Correction prisoners, while two of the individuals have no documented incidents with plaintiff and are not otherwise housed in plaintiff's PC unit.[7] Given his allegations of threat of harm, Plaintiff is on a security-appropriate housing assignment. Consequently, this complaint for injunctive relief shall be dismissed. A separate Order follows.

Dated: August 24, 2005   /s/
                         Catherine C. Blake
                         United States District Judge

---

[7] In his opposition, plaintiff claims that while it is true that he has no enemies on the PC tier, he is nonetheless placed at risk due to the refusal to update his OBSCIS enemies list. Paper No. 13. He asserts that he is in the process of obtaining the full names of these ten individuals from his attorney and states that they may be involved in ongoing criminal cases and are not yet Division of Correction prisoners. *Id.* These claims do not merit a different result here.